IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GIANNI VERSACE, S.p.A., | ) |
|             Plaintiff, | ) Case No. 18-cv-01173 |
| v. | ) **Judge Virginia M. Kendall** |
| ZHAO DEQUN, et al., | ) **Magistrate Judge Michael T. Mason** |
|             Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DEFENDANT DOMAIN NAMES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Gianni Versace, S.p.A. ("Versace") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary transfer of the Defendant Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. Versace's Trademarks and Products ................................................................... 2

    B. Defendants' Unlawful Activities ......................................................................... 3

III. ARGUMENT ................................................................................................................... 3

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

    B. Versace Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims ........................ 6

    C. There Is No Adequate Remedy at Law and Versace Will Suffer Irreparable Harm in the Absence of Preliminary Relief ........................................................ 8

    D. The Balancing of Harms Tips in Versace's Favor, and the Public Interest is Served by Entry of the Injunction ........................................................................ 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............................................ 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Versace's Marks Is Appropriate .................. 10

    B. Transferring the Defendant Domain Names to Versace's Control Is Appropriate 11

    C. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 11

    D. Versace Is Entitled to Expedited Discovery ...................................................... 12

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......................................... 13

VI. CONCLUSION ............................................................................................................... 13

MEMORANDUM OF LAW

I.  INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Gianni Versace, S.p.A. ("Versace") requests temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Versace's Amended Complaint, Defendants are selling and/or offering for sale unauthorized and unlicensed products, including handbags, sunglasses, small leather goods, accessories and other goods, bearing counterfeits of Versace's federally registered trademarks (collectively, the "Counterfeit Versace Products"), through various fully interactive, commercial Internet stores operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase Counterfeit Versace Products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Versace is forced to file this action to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Versace Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Versace respectfully request that this Court issue *ex parte* a Temporary Restraining Order.

II.     STATEMENT OF FACTS

   A. Versace's Trademarks and Products

Founded by Italian designer Gianni Versace in 1978, Versace is one of the most recognized and influential brands in the world. Declaration of Stacy Kuo (the "Kuo Declaration") at ¶ 3. Versace designs, manufactures, distributes and sells a wide variety of Italian-made luxury products throughout the world, from haute couture and ready-to-wear clothing, handbags and leather accessories, shoes, sunglasses, jewellery, watches and other fashion accessories, and home goods (collectively, the "Versace Products"). *Id*. The Versace Products are renowned for their high quality and style and are identified and recognized by the use of the Versace name and trademarks. *Id*. Versace Products are distributed and sold to consumers throughout the United States through Versace boutiques and luxury-brand retailers, including through authorized retailers in Illinois such as Nordstrom, Bloomingdale's, Saks Fifth Avenue and other high-end department stores, and through the official versace.com website, which was launched in 1997 and began e-commerce sales in 2013. *Id*. at ¶ 5.

Versace began using the VERSACE mark in U.S. commerce at least as early as 1994 in connection with handbags, clothing and other goods, and has continuously sold Versace Products under the VERSACE mark since then. *Id*. at ¶ 6. In addition to the VERSACE word mark, Versace has for many years used several distinctive and well-known classical design marks, including a Medusa Head Design and a "Greca" Design (collectively, the "Versace Trademarks"). *Id*. The Versace Trademarks are famous marks and valuable assets of Versace. *Id*. Versace Products typically include at least one of the registered Versace Trademarks. *Id*. The U.S. registrations for the Versace Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 8. The Versace Trademarks have been used exclusively and continuously by Versace and have never been abandoned. *Id.* at

¶ 10. The registrations for the Versace Trademarks constitute *prima facie* evidence of their validity and of Versace's exclusive right to use the Versace Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Versace Trademarks are attached to the Kuo Declaration as Exhibit 1.

### B. Defendants' Unlawful Activities

The success of the Versace brand has resulted in its significant counterfeiting. Consequently, Versace has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id*. at ¶ 14. In recent years, Versace has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale, and selling, Counterfeit Versace Products to consumers in this Judicial District and throughout the United States. *Id.* Despite Versace's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. *Id.* Versace's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Versace Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. In the event that Defendants provide additional credible information regarding their identities, Versace will take appropriate steps to amend the Amended Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Versace's reputation and the goodwill symbolized by its trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte*

TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Versace Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including PayPal accounts. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-8. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Versace respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically,

4

Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of the Versace Trademarks. *See* Amended Complaint at ¶¶ 2, 16, and 25–26. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Versace substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what

the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*.

### B. Versace Will Likely Succeed on the Merits of Its Trademark Infringement and Counterfeiting, False Designation of Origin, and UDTPA Claims

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

Versace's Lanham Act and UDTPA claims involve the same elements. See *Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011 A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the mark is likely to cause confusion among consumers. *Id*.

In this case, the Versace Trademarks are registered with the United States Patent and Trademark Office and have been used continuously for many years. Kuo Declaration at ¶¶ 7 and 10. The registrations for the Versace Trademarks constitute *prima facie* evidence of their validity and of Versace's exclusive right to use the Versace Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Versace has not licensed or authorized Defendants to use its Versace Trademarks, and none of the Defendants are authorized retailers of genuine Versace Products. *Id*. at ¶ 17. Thus, Versace satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a

presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the Versace Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Versace has submitted extensive documentation showing that Defendants are selling Counterfeit Versace Products that look similar to Versace's genuine Versace Products and use counterfeit marks identical to the Versace Trademarks. Here, both Versace and Defendants advertise and sell their products to consumers via the Internet, targeting consumers searching for genuine Versace products. Kuo Declaration at ¶¶ 5, 13. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Versace products from Counterfeit Versace Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Versace products to purchase Counterfeit Versace Products instead. In that regard, Defendants use the Versace word mark in many of their Defendant Domain Names, and they advertise Counterfeit Versace Products that bear the Versace Trademarks. *Id.* at ¶ 18. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Versace products. *CAE, Inc. v.*

7

*Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Versace is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

### C. There Is No Adequate Remedy at Law and Versace Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the Versace Trademarks has and continues to irreparably harm Versace through diminished goodwill and brand confidence, damage to Versace's reputation, loss of exclusivity, and loss of future sales. Kuo Declaration at ¶¶ 23-27. The extent of the harm to Versace's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to

8

plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Versace will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Kuo Declaration at ¶ 28.

### D. The Balancing of Harms Tips in Versace's Favor, and the Public Interest is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Versace has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Versace will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Versace has demonstrated, Defendants have been profiting from the sale of Counterfeit Versace Products. Thus, the balance of equities tips decisively in Versace's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Versace's approval and endorsement.

9

In this case, the injury to the public is significant, and the injunctive relief that Versace seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Versace's Marks Is Appropriate

Versace requests a temporary injunction requiring the Defendants to immediately cease all use of the Versace Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the Versace Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Versace Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Versace is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Versace Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

10

### B. Transferring the Defendant Domain Names to Versace's Control Is Appropriate

As part of the Temporary Restraining Order, Versace also seeks temporary transfer of the Defendant Domain Names to Versace's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished). As such, Versace respectfully requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Defendant Domain Names to transfer the Defendant Domain Names to Versace.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Versace requests an *ex parte* restraint of Defendants' assets so that Versace's right to an equitable accounting of Defendants' profits from sales of Counterfeit Versace Products is not impaired[1]. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Versace meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Versace has shown a strong likelihood of succeeding on the

---

[1] Versace has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

11

merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Versace is entitled, "subject to the principles of equity, to recover ... defendant's profits." Versace's Amended Complaint seeks, among other relief, that Defendants account for and pay to Versace all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Versace's request for a prejudgment asset freeze to preserve relief sought by Versace.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at*13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Versace has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Versace Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts

12

have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Versace respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Versace's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Versace's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Versace respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Versace's evidence of counterfeiting, infringement, and unfair competition, Versace respectfully requests that this Court require Versace to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Versace's business, its famous Versace brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Versace Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Versace Products have been manufactured by or emanate from

Versace, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Versace respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 16th day of February 2018.  Respectfully submitted,

/s/ Justin R. Gaudio
Paul G. Juettner
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
pjuettner@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Gianni Versace, S.p.A.*